UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PLEASANT CARTER,

                    Plaintiff,

         v.                                    **DECISION AND ORDER**
                                               02-CV-87S

ANTHONY DEVITO, PATRICK WARREN,
G. MONAHAN, DAVID POST, JAMES L. STONE,
HAROLD E. SMITH and GLENN S. GOORD,

                    Defendants.

## I. INTRODUCTION

In this action, pro se Plaintiff Pleasant Carter alleges pursuant to 42 U.S.C. § 1983

that Defendants violated his Eighth Amendment rights by denying him adequate medical

treatment while he was an inmate in the custody of the New York State Department of

Correctional Services ("DOCS").  Presently before this Court is Defendants' Motion for

Summary Judgment.[1]  This Court has reviewed and considered the motion papers and

finds that oral argument is unnecessary.  For the following reasons, Defendants' motion

is granted in its entirety.

---

[1]In support of their Motion for Summary Judgment, Defendants filed the following documents: a memorandum of law, a Rule 56 Statement of Undisputed Facts, the Declaration of Anthony DeVito, with attached exhibits, the Declaration of Stephen Gawlik, with attached exhibit, the Declaration of Girard Monahan, with attached exhibits, the Declaration of Glenn S. Goord, the Declaration of David Post, with attached exhibit, the Declaration of Harold Smith, the Declaration of James Stone, the Declaration of Patrick Warren, with attached exhibit, a reply memorandum of law, and the Reply Declaration of Patrick Warren with attached exhibit.
    In opposition to Defendants' motion, Plaintiff filed the following documents: a Rule 56 Statement of Disputed Facts, a memorandum of law, and the Declaration of Pleasant Carter, with attached exhibits.

## II. BACKGROUND

### A.    Procedural History

Plaintiff's Complaint was entered on the docket on January 30, 2002.  Because Plaintiff was granted *in forma pauperis* status, his Complaint and subsequent Amended Complaints were screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  As a result of this screening process, it was determined that only Plaintiff's claim that he was denied medical care was actionable.  Plaintiff filed a Second Amended Complaint asserting this claim on July 2, 2003.  Defendants' filed the instant Motion for Summary Judgment on June 29, 2005.  The facts underlying Plaintiff's claim are discussed below.

### B.    Facts

At all times relevant, Plaintiff was an inmate in the custody of the DOCS residing at the Wende Correctional Facility ("Wende").  (Defendants' Rule 56 Statement of Undisputed Facts ("Defendants' Statement"), ¶ 11.)  He was transferred to Wende on March 24, 2000, and remained at Wende in the Special Housing Unit ("SHU") until February 28, 2002. (Defendants' Statement, ¶ 11.) Defendants Anthony DeVito, Patrick Warren, G. Monahan, David Post, James L. Stone, Harold E. Smith and Glenn S. Goord were at all times relevant employed by DOCS in various capacities.  (Defendants' Statement, ¶¶ 4-10.)

### 1.    Plaintiff's Mental Health Treatment at Wende

Upon entering Wende, Plaintiff had a diagnosis of psychotic disorder not otherwise specified. (Defendants' Statement, ¶ 12.) Plaintiff was therefore provided services through the New York State Office of Mental Health ("OMH").  (Defendants' Statement, ¶ 12.)  In particular, Plaintiff was evaluated on March 24, 2000, within 24 hours of his admission to the Wende SHU.  (DeVito Decl., ¶ 6.)  The examining psychologist, Enrique Herryman,

2

found that Plaintiff was mentally stable and was experiencing no unusual symptoms. (DeVito Decl., ¶ 6.)

On March 27, 2000, three days after Plaintiff entered Wende, he was seen by Defendant Warren, who is a psychologist with the OMH.  (Defendants' Statement, ¶¶ 7, 15.)  Defendant Warren found that Plaintiff's mental status was clear, that there was no indication of a thought disorder, that Plaintiff did not appear to be experiencing auditory hallucinations, and that Plaintiff was calm, composed and cooperative.  (Warren Decl., ¶ 5.) Defendant Warren concluded that Plaintiff exhibited no psychiatric symptoms.  (Warren Decl., ¶ 5.)

As a result of his examination, Defendant Warren continued the course of treatment that had been developed when Plaintiff was housed at the Sing Sing Correctional Facility, which included receiving psychotropic medication prescribed by the treating psychiatrist and verbal psychotherapy to address Plaintiff's reports of depression and aggressive behavior.  (Warren Decl., ¶¶ 6, 7.)  In addition, Plaintiff was seen by OMH staff during daily rounds in the SHU.  (Warren Decl., ¶ 7.)  During the rounds, Plaintiff was observed by the staff and was given the opportunity to discuss his problems and possible alternative behaviors.  (Warren Decl., ¶ 7.)  This contact with Plaintiff was documented in Plaintiff's progress notes on at least a monthly basis.  (Warren Decl., ¶ 7; DeVito Decl., Ex. A.[2]) Plaintiff was also seen twice daily by mental health nurses who distributed medication. (Warren Decl., ¶ 8.)

On March 25, 2000, Plaintiff was seen by Dr. Jeffery Grace, the staff psychiatrist.

---

[2]Exhibit A to the DeVito Declaration contains Plaintiff's voluminous medical records.

(Warren Decl., ¶ 9.)  Dr. Grace reported that Plaintiff was not demonstrating significant emotion, was oriented, and was exhibiting fair insight and judgment.  (Warren Decl., ¶ 9.) Dr. Grace did not note any major distress or psychiatric symptoms.  (Warren Decl., ¶ 9.) As a result, Dr. Grace continued Plaintiff's medications and course of treatment.  (Warren Decl., ¶ 9.)  Plaintiff was scheduled to see Dr. Grace again on April 29, 2000, but Plaintiff refused to attend the appointment.  (Warren Decl., ¶ 10.)

On May 10, 2000, Plaintiff was transferred to the Central New York Psychiatric Center for a court-ordered evaluation in connection with pending assault charges.  (Warren Decl., ¶ 11, DeVito Decl., ¶ 14.)  Specifically, Plaintiff was being evaluated to determine whether he was competent to stand trial.  (DeVito Decl., ¶ 14.)  Two psychiatrists found Plaintiff mentally competent.  (DeVito Decl., ¶ 14.)  Plaintiff returned to Wende on August 26, 2000.  (Warren Decl., ¶ 11.)

On the day of his return, Plaintiff was seen by both Defendant Warren and Dr. Grace.  (Warren Decl., ¶¶ 12, 13.)  Defendant Warren noted that Plaintiff exhibited no serious mental health issues that required immediate care or a change in treatment. (Warren Decl., ¶ 12.)  Similarly, Dr. Grace noted no major distress or psychiatric symptoms.  (Warren Decl., ¶ 13.)

On August 30, 2000, Plaintiff was transferred out of Wende for a court proceeding and did not return until October 11, 2000.  (Warren Decl., ¶ 14.)  On the day of his return, Plaintiff was seen by Enrique Herryman, who found Plaintiff to be calm and in no acute distress.  (Warren Decl., ¶ 14.)  Plaintiff was scheduled to see Dr. Grace on October 14, 2000, but he refused the call-out.  (Warren Decl., ¶ 15.)

Plaintiff was again transferred out of Wende on October 19, 2000, until December

4

11, 2000, for a court proceeding.  (Warren Decl., ¶ 16.)  Upon his return, Plaintiff was assessed by Defendant Warren, who detected no serious psychiatric symptoms or distress.  (Warren Decl., ¶ 17.)  Plaintiff was thereafter seen regularly by OMH staff for assessment and treatment purposes.  (Warren Decl., ¶ 18.)

On February 28, 2002, Plaintiff was transferred to the Special Treatment Program ("STP") at the Five Points Correctional Facility based on a referral from Plaintiff's treatment team at Wende.  (Warren Decl., ¶ 19.)  Plaintiff was transferred there because the STP program provided more intensive mental health services to long term inmates housed in the SHU.  (Warren Decl., ¶ 19.)

### 2.    Plaintiff's "Time Cut" Request and the Intermediate Care Program

On May 3, 2001, Plaintiff made a request to Defendant Monahan for a "time cut" from the SHU.  Plaintiff requested that his SHU time be reduced based on his exemplary behavior.  (Monahan Decl., ¶ 1; Monahan Decl., Exhibit A[3].)  Plaintiff did not complain that his mental health status was being ignored or required transfer out of the SHU.  (Monahan Decl., Exhibit A.)  On May 17, 2001, Defendant Monahan denied Plaintiff's request, noting that Plaintiff had received a misbehavior report on May 15, 2001.  (Monahan Decl., ¶ 5; Monahan Decl., Exhibit B[4].)  On November 26, 2001, Plaintiff again requested a time cut from Defendant Monahan.  (Monahan Decl., ¶ 6.)  On December 12, 2001, Defendant Monahan denied Plaintiff's request.   (Monahan Decl., ¶ 6.)

Plaintiff suggests that he applied for the time cuts so that he could participate in the

---

[3]Exhibit A to the Monahan Declaration is a copy of Plaintiff's letter request for a time cut from SHU.

[4]Exhibit B to the Monahan Declaration is a copy of the letter denying Plaintiff's time cut request.

Intermediate Care Program ("ICP").  However, Plaintiff never requested admittance to the ICP.[5]  (Post Decl., ¶ 8; Post Decl., Exhibit A.)  Rather, on or about April 11, 2001, Plaintiff requested *information* about the ICP from Defendant Post, who is a Senior Corrections Counselor.[6]  (Post Decl., ¶¶ 1, 8; Post Decl., Exhibit A[7].)  At no time, however, did Plaintiff apply to the ICP.  (Post Decl., ¶ 8; Post Decl., Exhibit A.)

Referrals to the ICP could be made by DOCS staff, OMH staff or the inmate himself. (Post Decl., ¶ 6.)  When a referral was made, a three-person committee consisting of Defendant Post, a representative of the ICP security staff and the OMH clinical coordinator, would determine whether the inmate was suitable for ICP.  (Post Decl., ¶ 6.)  In situations where a SHU inmate was deemed an appropriate candidate for the ICP, an application was made by the ICP staff to Defendant Monahan for a time cut. (Post Decl., ¶ 7; Monahan Decl., ¶ 7.)  Defendant Monahan would then determine whether a time cut was appropriate.  (Monahan Decl., ¶ 7.)

At no time did Defendant Warren or any other OMH personnel believe Plaintiff needed additional treatment or would make a suitable candidate for the ICP.  (Defendants' Statement, ¶ 45.)  Moreover, Defendant Monahan never received a time cut request for purposes of allowing Plaintiff to participate in the ICP. (Monahan Decl., ¶ 7.)  Further, as

---

[5]In his declaration, Plaintiff asserts that Defendant DeVito advised him to write to Defendant Monahan for a time cut, and that he requested the time cut so that he could "receive his needed treatment." (Carter Decl., ¶ 24.) Plaintiff's letters, however, clearly indicate that he was seeking a time cut based on his good behavior. (Monahan Decl., Exhibit A and B.) There is no reference to Plaintiff needing a time cut so that he could receive mental health treatment. (Monahan Decl., Exhibit A and B.)

[6]In his declaration, Plaintiff characterizes this letter as a "self referral" to the ICP that was ignored by Defendants. (Carter Decl., ¶ 23.) It is clearly stated in the letter, however, that Plaintiff's purpose was "to find out the criterion for your I.C.P. program." (Post Decl., Exhibit A.)

[7]Exhibit A to the Post Declaration is a copy of Plaintiff's letter requesting ICP information.

noted, Plaintiff himself never requested that he be admitted to the ICP.  (Post Decl., ¶ 8; Post Decl., Exhibit A.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  As Plaintiff is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Plaintiff's Second Amended Complaint contains two causes of action related to his claim that Defendants' denied him adequate medical treatment in violation of his Eighth Amendment rights.  In his first cause of action, Plaintiff asserts that Defendants DeVito, Warren, Post and Monahan ignored his requests for treatment and denied him adequate medical care and therapy for schizophrenia.  He claims that these defendants told him that he could not receive treatment while he was in the SHU.  In his second cause of action, Plaintiff asserts that Defendants Stone, Smith and Goord failed to promulgate proper regulations to ensure adequate medical treatment and failed to properly supervise the staff at Wende.

Defendants have moved for summary judgment on both causes of action.  As a threshold matter, Defendants argue that Defendants Stone, Goord, Smith, Monahan and Post are entitled to summary judgment because there is no evidence that they were personally involved in the alleged constitutional violation.  Defendants further argue that all defendants are entitled to summary judgment because Plaintiff has failed to establish

a violation of his Eighth Amendment rights.  Finally, Defendants argue that they are entitled

to the protections of qualified immunity.  Each of Defendants' arguments is addressed

below.

**A.      Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

is warranted where the "pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  FED. R.

CIV. P. 56©.  A "genuine issue" exists "if the evidence is such that a reasonable jury could

return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354

(2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing

law." Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate

burden of proof at trial, the movant may satisfy its burden by pointing to the absence of

evidence supporting an essential element of the non-moving party's claim. See Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial."

Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any

evidence in the record that could reasonably support a jury's verdict for the non-moving

party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and

the inferences drawn from the evidence "in the light most favorable to the party opposing

the motion." <u>Addickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609,

26 L.Ed.2d 142 (1970).   However, the party against whom summary judgment is sought

"must do more than simply show that there is some metaphysical doubt as to the material

facts . . . . [T]he nonmoving party must come forward with specific facts showing that there

is a genuine issue for trial." <u>Caldarola v. Calabrese</u>, 298 F.3d 156, 160 (2d Cir. 2002).

"Only when reasonable minds could not differ as to the import of evidence is summary

judgment proper."  <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).

## B.    Personal Involvement

Personal involvement in the deprivation of federal constitutional rights is the *sine*

*qua non* of liability under § 1983.  <u>See</u> <u>Haygood v. City of New York</u>, 64 F.Supp.2d 275,

280 (S.D.N.Y. 1999).  Moreover, it is well settled in this Circuit that personal involvement

by defendants in cases alleging constitutional deprivations is a prerequisite to an award of

damages under § 1983.  <u>See</u> <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977);

<u>Richardson v. Coughlin</u>, 101 F.Supp.2d 127, 129 (W.D.N.Y. 2000); <u>Pritchett v. Artuz</u>, No.

99 Civ. 3957 (SAS), 2000 WL 4157, *5 (S.D.N.Y. Jan. 3, 2000).   The Second Circuit

construes personal involvement in this context to mean "direct participation, or failure to

remedy the alleged wrong after learning of it, or creation of a policy or custom under which

unconstitutional practices occurred, or gross negligence in managing subordinates." <u>Black</u>

<u>v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996); <u>see</u> <u>also</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d

Cir. 1994).

Defendants argue that Defendants Stone, Goord, Smith, Monahan and Post were

not personally involved in the alleged deprivation of Plaintiff's constitutional rights for purposes of § 1983.  Defendant Stone was the Commissioner of the OMH and in that capacity was responsible for the overall management of the OMH.  (Stone Decl., ¶¶ 1, 4.) Defendant Goord is the Commissioner of the DOCS and is responsible for the overall management of the DOCS.  (Goord Decl., ¶¶ 1, 3.)  Defendant Harold Smith is the Executive Director of the Central New York Psychiatric Center and is responsible for the overall management of the facility.  (Smith Decl., ¶¶ 1, 4.)

Plaintiff alleges that these defendants deprived him of adequate medical treatment by failing to promulgate proper regulations and failing to properly supervise their employees.  Plaintiff also alleges generally that he made "written attempts to seek adequate treatment."  (Carter Decl., ¶ 19.)  Even assuming that Plaintiff sent letters to these defendants, that fact alone is insufficient to maintain a § 1983 claim.[8]  Courts have consistently held that the mere receipt of a letter does not render a supervisor personally liable.  See Hyman v. Holder, No. 96 Civ. 7748 (RCC), 2001 WL 262665, *6 (S.D.N.Y. 2001) (no personal involvement where inmate wrote letter to supervisor, who then forwarded it to deputy); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Richardson, 101 F.Supp.2d at 131; Thomas v. Coombe, 95 Civ. 10342, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998); Gayle v. Lucas, 97 Civ. 883, 1998 WL 148416, at *4 (S.D.N.Y. Mar. 30, 1998).

It appears that each of these defendants is being sued simply because he was in

---

[8]It does not appear as though Plaintiff sent letters to Defendants Stone or Smith. (Gawlik Decl., ¶¶ 6-7.)  Plaintiff did, however, send letters to Defendant Goord.  (Goord Decl., ¶ 6.)  Those letters were processed by Defendant Goord's staff, and there is no evidence that Defendant Goord was ever personally aware of the content of Plaintiff's letters or read or responded to them.  (Goord Decl., ¶¶ 4-6.)

charge of his respective organization.   Such allegations are insufficient to establish the required level of personal involvement.   See Black, 76 F.3d at 74 ("a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority").   There is no evidence that Defendants Goord, Smith, or Stone were personally aware of Plaintiff's mental health status or were in any way involved in his medical treatment.   As such, these defendants are entitled to summary judgment.

Turning to the other two Defendants, Defendant Monahan is the Deputy Superintendent of Security at Wende.   (Monahan Decl., ¶ 1.)   He denied Plaintiff's two requests for a "time cut" in his SHU time.   (Monahan Decl., ¶¶ 5, 6.)   Defendant Post is a Senior Corrections Counselor at Wende and in that capacity he supervises the corrections counselors who provide counseling services to inmates.   (Post Decl., ¶¶ 1, 4.)   At the times relevant hereto, he was also the coordinator of the ICP.   (Post Decl., ¶ 4.)

There is no evidence that either Defendant Monahan or Defendant Post had any personal involvement in Plaintiff's mental health treatment.   Defendant Post's only interaction with Plaintiff was that he received Plaintiff's letter requesting information regarding the ICP.   (Post Decl., ¶ 8.)   Defendant Monahan's only interaction with Plaintiff was that he denied his requests for SHU time cuts.   (Monahan Decl., ¶¶ 5, 6.)   Those requests were unrelated to Plaintiff's mental health status.   (Monahan Decl., ¶¶ 5, 6.)   There is no evidence that either defendant was involved in any way with Plaintiff's medical care.   As such, Defendants Post and Monahan lack the personal involvement required to sustain liability under § 1983.   Consequently, summary judgment in their favor is warranted.

C.      **Eighth Amendment Claim**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting

under color of state law, deprive an individual of rights, privileges, or immunities secured

by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide

a source of substantive rights, but rather, a method for vindicating federal rights conferred

elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386,

393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443

U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).   Accordingly, as a

threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely

identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Plaintiff's

§ 1983 claims are grounded in the Eighth Amendment.

The Eighth Amendment to the United States Constitution applies to the States

through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual

punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct.

2321, 2323, 115 L.Ed.2d 271 (1991); U.S. Const. amend. VIII.  As such, prison conditions

and the treatment prisoners receive while incarcerated are subject to scrutiny under the

Eighth Amendment.  See DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S.

189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989).   In addition, the

Supreme Court has recognized that a prisoner's claim that he was intentionally denied

medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious
> medical needs of prisoners constitutes the unnecessary and
> wanton infliction of pain proscribed by the Eighth Amendment.
> This is true whether the indifference is manifested by prison

> doctors in their response to the prisoner's needs or by prison
> guards in intentionally denying or delaying access to medical
> care or intentionally interfering with the treatment once
> prescribed.   Regardless of how evidenced, deliberate
> indifference to a prisoner's serious illness or injury states a
> cause of action under § 1983.
> . . .
> In order to state a cognizable claim, a prisoner must allege
> acts or omissions sufficiently harmful to evidence deliberate
> indifference to serious medical needs.   It is only such
> indifference that can offend evolving standards of decency in
> violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 292, 50 L.Ed.2d 25

(1976)(quotations and citations omitted).

 "A claim of cruel and unusual punishment in violation of the Eighth Amendment

has two components--one subjective, focusing on the defendant's motive for his conduct,

and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20

(2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117

L.Ed.2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)).

The subjective component "requires a showing that the defendant "had the

necessary level of culpability, shown by actions characterized by 'wantonness' in light of

the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21

(citations omitted).   The objective component is "contextual and responsive to

contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

With respect to a claim of deliberate indifference to a serious medical need, a

prisoner must also show that he suffered from a "sufficiently serious" medical condition,

see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and that the defendants acted

with a "sufficiently culpable state of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.

13

1994).

> "An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).

This Court has reviewed the extensive medical records and other evidence submitted by the parties.  Based on that review, this Court finds that Plaintiff has failed to demonstrate the existence of any genuine issue of fact regarding his Eighth Amendment claims.  Even viewing all of the evidence in the light most favorable to Plaintiff, this Court finds that Plaintiff's claim fails.

Plaintiff contends that the mental health treatment he received while incarcerated at Wende was constitutionally inadequate because he was not treated for schizophrenia and a history of psychosis.  (Carter Decl., ¶¶ 3, 4.)  He asserts that the treatment program from Sing Sing that was continued when he arrived at Wende was based on an outdated diagnosis and did not account for all of his mental health conditions.  (Carter Decl., ¶ 4.)  In particular, Plaintiff asserts that his entering diagnosis of psychotic disorder not otherwise specified was incorrect, and that he was actually suffering from schizophrenia.  (Carter Decl., ¶ 5.)

A review of the record reveals that it contains no evidence supporting Plaintiff's claim that he suffered from or was ever diagnosed with schizophrenia.  Moreover, the mental health treatment that Plaintiff received was symptom-based, which means that even

14

if Plaintiff was suffering from undiagnosed schizophrenia, his treatment program would not have changed.  (Warren Reply Decl., ¶ 6.)

Plaintiff also asserts that Defendants ignored his transfer orders by placing him in SHU when he arrived at Wende.  (Carter Decl., ¶ 11.)  He argues that his transfer orders required that he be (1) placed in residential crisis treatment, (2) placed in a residential day treatment program (e.g., ICP, AVP), and (3) have his medication monitored by OMH psychiatric nursing staff.  (Carter Decl., ¶ 10; Carter Decl., Exhibit C.[9])

Plaintiff has misread his transfer orders.  The transfer orders indicate that Plaintiff should be placed in a facility *that offers* treatments for major mental disorders, such as residential crisis treatment, residential day treatment and psychiatric nurse monitoring.  (Carter Decl., Exhibit C (emphasis added).)  The transfer orders do not require Plaintiff's placement in these programs.

Upon Plaintiff's arrival at Wende, Defendants examined him and determined his mental health needs.  Although Wende offered the programs listed in Plaintiff's transfer orders, the OMH staff determined that such services were not necessary at that time.  Plaintiff was continued on a course of mental health treatment that Defendants' deemed suitable.  Based on this attention to Plaintiff's mental health needs, it cannot reasonably be concluded that Defendants' were deliberately indifferent to Plaintiff's medical needs upon his admission to Wende.

Plaintiff further contends that upon his admission to Wende, he "was given only medication and summarily left in the [SHU]."  (Carter Decl., ¶¶ 12, 18.)  He states that he

---

[9]Exhibit C to the Carter Declaration is a copy of Plaintiff's transfer orders.

was told that he would receive no treatment while he was in the SHU.  (Carter Decl., ¶ 22.)

These allegations are directly contradicted by the record evidence.  Plaintiff was seen by

OMH staff within 24 hours of arriving at Wende.  (Warren Decl., ¶ 9.)  He was seen again

two days later.  (Warren Decl., ¶ 5.)  On both occasions Plaintiff's mental health condition

was assessed and his treatment program was evaluated.  In addition to this immediate

attention, Plaintiff was seen daily on an ongoing basis by OMH staff and mental health

nurses.  (Warren Decl., ¶ 8.)  He was also actively treated by two psychologists and a

psychiatrist.  Plaintiff's voluminous mental health records demonstrate that Defendants

were attentive to Plaintiff's medical needs, and they erase any notion that Defendants'

simply medicated Plaintiff and left him in the SHU.  (DeVito Decl., Exhibit A.)

Finally, Plaintiff contends that he was admitted to the Central New York Psychiatric

Center in June of 2000 due to his psychosis.  (Carter Decl., ¶ 14.)  He contends that he

was told at the Psychiatric Center that he suffers from schizophrenia and he received

treatment for that condition.  (Carter Decl., ¶¶ 16, 17.)  These allegations, however, find

no support in the evidentiary record.  It is clear that Plaintiff was transferred to the

Psychiatric Center to be evaluated for purposes of determining his competency to stand

trial, not because of any acute mental health condition.  (Warren Decl., ¶¶ 11, DeVito

Decl., ¶ 14.)  Plaintiff appears to concede as much in his declaration, wherein he states

"the admission [to Central New York Psychiatric Center] was ordered by the [B]ronx county

court and not the Defendants."  (Carter Decl., ¶ 15.)  Moreover, Plaintiff cites to no

evidence supporting his contention that he was diagnosed with schizophrenia while at the

Psychiatric Center.  Indeed, the record contains no such evidence.

In sum, this Court finds that Plaintiff has not demonstrated the existence of any

16

genuine issue of fact regarding his Eighth Amendment claims.    In this Court's view, Plaintiff cannot sustain his claim that Defendants' actions constitute deliberate indifference to his medical needs.  First, there is no evidence that Plaintiff suffered from a "sufficiently serious" medical condition that required medical treatment beyond what he received. There is simply no suggestion in the record, let alone any evidence, that Plaintiff suffered from an untreated medical condition that was "sufficiently serious, in the sense that [it was] a condition of urgency, one that may produce death, degeneration, or extreme pain." Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998).

Moreover, Plaintiff cannot demonstrate that Defendants acted with a sufficiently culpable state of mind to meet the deliberate indifference standard.  See Hathaway, 37 F.3d at 66.  To the contrary, the record contains numerous progress reports and medical records that demonstrate that Plaintiff received mental health treatment.  Defendants were aware that Plaintiff had mental health issues, they evaluated his needs, and they provided him treatment.  Based on the record evidence, no reasonable trier of fact could conclude that Defendants knew of and disregarded a medical condition that presented an excessive risk to Plaintiff's health.[10]  See Hathaway, 37 F.3d at 66.

It appears that at bottom, Plaintiff's complaint is that he did not receive the level of medical care that he deemed appropriate.  Plaintiff's preference for different treatment, however, does not raise a constitutional issue.  As noted by the Second Circuit, "it is well-established that mere disagreement over the proper treatment does not create a

---

[10]Plaintiff's claim that Defendants acted with deliberate indifference is further undermined by the fact that Defendants transferred Plaintiff from Wende to the Five Points Correctional Facility so that he could receive more intensive mental health treatment.  (Warren Decl., ¶ 19.)

constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Armstrong, 143 F.3d at 703.  Finally, to the extent Plaintiff's claims allege that Defendants' were negligent in not diagnosing him with schizophrenia, this Court notes that a complaint that medical personnel acted negligently in treating or failing to diagnose a condition "does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 104.

Accordingly, for the reasons stated above, this Court finds that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

## C.    Qualified Immunity

Defendants argue that, even assuming that there was a constitutional deprivation, they are entitled to qualified immunity.  Officials are protected from § 1983 liability on the basis of qualified immunity if their actions (1) did not violate clearly established law or (2) it was objectively reasonable for the officials to believe that their actions did not violate the law.  See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999).  As discussed above, this Court finds Defendants' treatment of Plaintiff was reasonable.  Moreover, it is objectively reasonable to conclude that Defendants' believed that their own actions were reasonable: they identified Plaintiff as having mental health needs, they evaluated and assessed his condition, and they provided ongoing mental health treatment, including counseling and medication.    Accordingly, this Court finds that even assuming the existence of a constitutional violation, Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket

No. 108) is GRANTED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:        March 7, 2006
              Buffalo, New York

                                        /s/William M. Skretny
                                         WILLIAM M.  SKRETNY
                                        United States District Judge